# Sample *et al.* v. Reeder *et al.*

*Statutory action of ejectment.*

1. *Prescription; presumption of grant repelled by recognition of outstanding title.*—If during the time relied on to perfect title by prescription, there is a recognition by the purchaser of the outstanding title of the vendor, and an acknowledgement that he owes the purchase money, the possession and claim of ownership of such purchaser, continues in subserviency to that title.

2. *Same; case at bar.*—If during the time throughout which possession by one claiming under an administrator's sale is relied upon as being adverse, he has admitted that he had no deed to the land, and could give none, and that he had never paid the purchase money, his possession and claim of ownership are in subserviency to the title which he thus recognized.

3. *Adverse possession; proof of acts of ownership*—A vendee in possession and holding in recognition of his vendor's title, must do more than perform the usual acts of ownership in order to set in operation the statute of limitations; he must convert his permissive holding into one of actual hostility, by an open repudiation of the title, actual notice of which is carried home to him by whose permission his possession began and was continued

4. *Same; case at bar.*—Leasing part of the land in controversy to tenants for a portion of the period during which possession is claimed as adverse, and cutting timber and firewood thereon, are not such acts of actual occupation as will convert the permissive holding of a vendee in possession, into one of actual hostility.

APPEAL from the circuit court of Lauderdale.

Tried before the Honorable H. C. SPEAKE.

The appeal in this case is prosecuted by the plaintiffs in the court below from a judgment rendered in favor of the defendants. The facts of the case are sufficiently stated in the opinion.

[Sample *et al.* v. Reader *et al.*]

PAUL HODGES for the appellant.—To entitle plaintiff to recover, it was necessary there should be evidence tending to show that the possession was permissive in its inception. That is to say a tenancy at will was created by the sale to McVay, and that a tenancy at will is one answering to this description, permissive in its inception.—*Wells v. Sheerer*, 78 Ala., 142; *Hart v. Kendall*, 82 Ala., 148; *Collins v. Johnson*, 57 Ala., 304. Having shown that the possession was permissive in its inception, then in order to set in motion the doctrine of prescription or twenty years statute, there must have been a renunciation or disclaimer of the title of the heirs. Such renunciation or disclaimer must be brought home to the knowledge of the heirs. After such renunciation or disclaimer is brought home to the knowledge of the heirs, twenty years must have elapsed before title is conferred by the force and effect of the doctrine. The leading cases supporting these propositions, are *McArthur v. Carrie*, 32 Ala., 75; *Potts v. Coleman*, 67 Ala., 221; *Wells v. Shearer*, 78 Ala., 142; *Long v. Parmer*, 81 Ala., 384; *Woodstock Iron Co. v. Roberts*, 87 Ala., 436; *Hart v. Kendall*, 82 Ala., 148; *Kirk v. Smith*, 9 Wheaton, 288; see also Burwell on Limitations, sec. 237. The leading case in this State is *McArthur v. Carrie*, 32 Ala., 75, and in addition to the cases above, most of which use the language in that case with respect to permissive possession, the following cases are referred to: *Glenn v. Semple*, 80 Ala., 159; *Woodstock Iron Co. v. Fullenwider*, 87 Ala., 584. It also follows from these cases that during the whole of the period of twenty years that must elapse after such renunciation, there must have been adverse possession, that is to say, there must not have been any recognition or admission that the former relation still exists.

And the possession must not only have these characteristics of hostility to the title of the heirs but the same continuity that is required in order that the statute of limitations may bar an action shall exist during the entire period of twenty years. If there has been any admission or recognition of the title of the heirs made by the defendants or those under whom they claim during the twenty years last past before suit brought or any admission of a material fact on which the right in question rests during that interval or any admission made

within that time by the defendant or those under whom they claim that the defendant or those under whom they claim did not have the title it will be sufficient to destroy all application of the doctrine of prescription.

Perhaps a fairer statement is that if the defendants have shown twenty years uninterrupted possession the presumption in the first instance is in their favor. But that we overturn such presumption by showing that it was permissive in its inception.

And that it is not necessary in such case for us to show any admission or recognition but that it devolves on the defendants to show a renunciation or disclaimer. And finally that even if they should show such renunciation or disclaimer, or if they should show that the possession was not permissive in its inception we would prevent all application of the doctrine of prescription by showing an admission or recognition of the title of the heirs or of a material fact on which the right in question rests or an admission that the party making it did not himself have the true title, which admission or recognition has been made within the twenty years last past before suit brought. Or we should defeat it by showing that the possession had not that degree of continuity and certainty about it which will cut off the title of the plaintiff.

That the possession of McVay was permissive, see *Collins v. Johnson*, 57 Ala., and authorities there cited. 82 Ala. 148; *Wells v. Shearer*, 78 Ala. 142.

SIMPSON & JONES, for the appellees.

HEAD, J.—Statutory real action by appellants, Sample *et al.* against appellees, Reeder *et al.* Plaintiffs are the heirs of Wiley T. Hawkins, who died in 1862, owning the lands in controversy. Defendants claim under an alleged purchase by Henry W. McVay from Henry C. Jones, as the administrator of the estate of said Wiley T. Hawkins, deceased, in October, 1867; purchase by Wm. Hallerman from said McVay, in 1878; deed from Hallerman and wife and McVay to A. G. Burnett and W. L. Reeder, Dec. 17, 1886; deed from Alice G. Burnett and A. G. Burnett, to three-fourths interest in the land, to Lee Howell, Dec. 28, 1887; deed from Lee Howell and wife and W. L. Reeder to the

Lauderdale Manufacturing Company, January 18, 1889, and deed from that company to defendants, January 20th, 1889. The defendants also claimed that they, and those through whom they claimed to have derived title, had had adverse possession of the land for more than twenty years before this suit was brought. This was denied by the plaintiffs. There was no deed produced of Jones, administrator of Hawkins, to McVay, nor Mc-Vay to Hallerman. What evidence there is, in reference to these two alleged purchases, is, for the most part, oral. The plaintiffs, after making out title in themselves, as the heirs at law of Wiley T. Hawkins, their ancestor, proceeded further, in anticipation, and introduced a petition filed by said Jones, as administrator of said Hawkins, on January 5th, 1866, in the probate court of Lauderdale county, wherein the lands lay and the administration was pending, for an order for the sale of these and other lands of the estate for the payment of debts, alleging the insolvency of the estate. The petition was set down for hearing, by the court, as the record shows, on January 31, 1866, but it does not appear by the record that any further action was ever taken upon it. The plaintiffs then introduced the testimony of four witnesses, *"showing, or tending to show,"* (as the bill of exceptions recites) that the lands in controversy were purchased by Henry McVay at a sale made by Henry C. Jones, as administrator *de bonis non* of the estate of Wiley T. Hawkins, in October or November, 1867. That said McVay claimed the lands under such purchase, and that for three or four years after the sale he had tenants on the land, in section 32, and the part that had been cleared, fenced and cultivated. The evidence showed, without conflict, that McVay had often stated, within twenty years after his alleged purchase and within the same period before this suit was brought, that he had no deed to the land and could give none; that he had never paid the purchase money, and if the land was sold the administrator would have to make the deed. These declarations were made to one of the plaintiffs and to parties seeking to buy. This testimony was, as we have said, introduced by the plaintiffs. On the other hand, the defendants introduced the administrator, Henry C. Jones, as a witness, and his testimony tended to show, affirmatively, that he made no such

sale ; obtained no order for such a sale ; made no report of a sale ; received no purchase money, obtained no order to make a conveyance, and made no conveyance.   He testified that, personally, he knew but little about the estate ; that the estate was largely indebted to McVay and he thought there was some arrangement that Mc-Vay should have the land for the debt the estate owed him.   The defendants (we assume), for we are without a brief in their behalf, invoke the doctrine of prescription, and insist that after the lapse of twenty years from the date of the sale by the administrator to McVay, (upon which sale, it seems, they rely, notwithstanding their proof that none such was ever had) it will be presumed that the sale was duly reported and confirmed, the purchase money paid and reported, order for titles made and a conveyance executed ; and they claim, upon this presumption, that the title passed to McVay from the heirs of Wiley T. Hawkins.   Whether the presumption upon which the doctrine of prescription rests, in the absence of a recognition, within the twenty years, in op position to it, applies, as contended, to cases of this kind, or the extent to which it does apply,   (see *Collins v. Johnson,*57 Ala. 304,3d Head Note, and *Tayloe v. Dugger*, 66 Ala. 444, 447), need not now be decided, for the rule is uniform that if, during the time relied on, there is a recognition by the purchaser of the outstanding title of the vendor  and an  acknowledgment that he owes the purchase money, the possession and claim of ownership continues in subserviency to that title.   In such case the presumption which might otherwise arise is repelled.— *Long, Admr., v. Parmer*, 81 Ala. 384 ; *Newsome v. Snow*, 91 Ala. 641, and many other cases not necessary to be cited.   See many of them collected in 3 Brick. Dig.  17, § 23 ; 1 Am. & Eng. Ency. Law, 229, § 6 et seq.   We have seen that the undisputed evidence shows that Mc-Vay expressly claimed under and in subserviency to the outstanding title, and in recognition that he still owed the purchase money, within the time essential to create the right of prescription relied upon.   Thus it appears, as matter of law  that McVay never acquired, by grant, the title of the heirs of Wiley T. Hawkins.

Title by adverse possession of the defendants and those through whom they claim is relied upon.   The only actual occupation of the lands, of which the record fur-

[Sample *et al.* v. Reeder *et al.*]

nishes any evidence, was by McVay and Hallerman. For two reasons McVay's possession amounts to nothing for the purposes of this defense : 1st. As above stated, his possession was in its nature permissive. 2d. He never had actual possession, except, that, for three or four years after he bought, he had some tenants on a part of the land in § 32; and the bill of exceptions vaguely recites that there was evidence tending to show the cutting of firewood and rails by Hallerman and Mc-Vay on the land in § 32, but no evidence as to the cutting of timber on the forty acres in section 5. To what extent and how long continued the cutting was the defendants have not shown. If such acts had been shown to have been of such character as to constitute actual possession, and that they continued for ten years, yet they were only such acts as a vendee in possession may perform consistently with his recognition of title in his vendor, and subserviency to that title. Such a vendee in possession, so holding, must do more than perform the usual acts of ownership in order to set in operation the statute of limitations in his behalf. He must convert his permissive holding into one of actual hostility, by an open repudiation of the title, actual notice of which is carried home to him by whose permission his possession began and was continued. Authorities *supra*. So much as to McVay's supposed adverse possession. If it be conceded that Hallerman's possession was of that actual, open and continuous adverse character essential to give title by possession, it continued for only about eight years, viz : from 1878 to 1886. As we have said, there is no evidence of possession on the part of any one else, and the defense of title under the statute of limitations of ten years consequently fails. The plaintiffs were entitled to the general affirmative charge in their favor, and this being so, we deem it unnecessary to pass on the several special charges given and refused. The court will understand, from what we have said, which of them were improper.

Much of the testimony admitted against the objection of the plaintiffs, was immaterial and improper. The views we have taken of the case will enable the court to determine what portions of such evidence ought to have been rejected.

Reversed and remanded.